IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

GUY L. GOSCINIAK                                                                  PLAINTIFF

           v.                  Civil No. 04-5210

CAPTAIN HUNTER PETRAY and
LT. GEAN HENDRICKS                                        DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Guy L. Gosciniak brings this civil rights action under 42 U.S.C. § 1983. He proceeds pro se and in forma pauperis. Plaintiff alleges that his constitutional rights were violated while he was detained in the Benton County Detention Center.

On June 27, 2005, the defendants filed a motion for summary judgment (Docs. 18-20.) On August 12, 2005, the undersigned entered an order directing the plaintiff to complete, sign, date, and return by September 9, 2005 an attached questionnaire that would serve as his response to the defendants' motion for summary judgment. (Doc. 23.) On November 10, 2005, the undersigned entered a report, recommending that the plaintiff's case be dismissed for his failure to comply with the court's August 12 order. (Doc. 26.) Objections to the report were due by December 1, 2005. On December 1, plaintiff filed his response (Doc. 27) to the defendants' motion for summary judgment, and the district court declined to adopt the report and has referred the matter back to the undersigned for further consideration. (Doc. 28.) The defendants' motion for summary judgment is now before the court for issuance of this report and recommendation.

### I. Background

According to the plaintiff, he was booked into the Benton County Detention Center on

February 24, 2004 and released approximately September 5, 2004. (Doc. 27 at ¶¶ 1, 17.) On May 19, 2004, after refusing to obey the orders of a deputy, he was placed on lock down for 10 days. (Doc. 27 at ¶ 2.) On June 16, 2004, plaintiff was involved in an altercation with an inmate French. The plaintiff hit French in the face, causing injuries to French's eye and lip. Following a disciplinary hearing, plaintiff was placed on lock down for thirty days. (Doc. 27 at ¶¶ 3-5.)

After plaintiff completed the thirty days of lock down, he was returned to the same pod on which inmate French was being housed. (Doc. 27 at ¶ 7.) Plaintiff was allowed to remain on this pod for approximately two hours, then he was transferred to Pod E 103 for administrative segregation, after French and his attorney complained that French was still afraid of the plaintiff. (Doc. 20 at Ex. 1 (Petray Affidavit) at ¶ 5; Doc. 27 at ¶¶ 7-9.) Both plaintiff and French were on federal holds, and jail policy mandated that they be kept separate from inmates who were not classified as being on federal holds. (Doc. 20 at Ex. 1 ¶ 5.) The following day, plaintiff submitted a grievance, inquiring as to why he was still on lock down after he had completed his 30-day term. (Doc. 27 at ¶ 10.) Captain Hunter Petray responded, "You are not on lock down. You are being kept separate from another inmate that you have problems with." (Doc. 20 at Ex. 7.) Plaintiff maintains that despite Petray's statement, he was kept locked down in his cell for 23 hours a day and thus was on lock down status following his 30-day term of imposed lock down. (Doc. 27 at ¶ 11.)

On July 21, plaintiff filed another grievance questioning his lock down status. Petray responded, "You have a problem with another inmate. You were lock down for hitting inmate French. You are both Federal holds and I can not put the two of you together." (Doc. 20 at Ex. 8.) Plaintiff notes that he and French were separated and he was moved to administrative

segregation. (Doc. 27 at ¶ 13.)

On July 27, plaintiff filed a grievance asking why he was on administrative segregation. (Doc. 20 at Ex. 9; Doc. 27 at ¶ 14.) Petray responded, "You are being separated from another inmate in this facility that you assaulted and are being charged with." (Doc. 20 at Ex. 9.) Plaintiff contends that he had completed his lock down time and was essentially still on lock down. (Doc. 27 at ¶ 15.)

Concerning plaintiff's claims that he was denied the opportunity to attend group religious services while on lock down and administrative segregation, the plaintiff states that he while detained at the Benton County Detention Center, he attended 38 church services, however he was never notified of the time of these services. (Doc. 27 at ¶¶ 18-19.) Plaintiff was not permitted to attend church services while on lock down from June 16 to July 16. (Doc. 27 at ¶ 23.) Such restriction on attending group religious services is based on the policy of the Benton County Detention Center. (Doc. 20 at Ex. 1 at ¶ 13.) According to the defendants, plaintiff did attend group religious services on July 17, 20, 26, 28, 29, 30, August 10, 16, 20, 27, and 27, while he was being held on administrative segregation. The defendants provide plaintiff's Activity Report to support this claim. (Doc. 20 at Ex. 2.) The plaintiff states that he is without knowledge as to this claim. (Doc. 27 at ¶ 25.)

The plaintiff contends that these restrictions forced him to stop practicing his religion because he could not attend services. Plaintiff claims both that he did request a private service from a chaplain while he was on lock down and that he was never told what the procedure was for requesting to see a chaplain or how to see a chaplain. (Doc. 27 at ¶¶ 16, 29.)

In their motion for summary judgment, the defendants assert (1) they are being sued in

AO72A
(Rev. 8/82)

their official capacities only, (2) there is no unconstitutional policy that is the "moving force" behind any harms suffered by plaintiff, (3) plaintiff cannot establish that his constitutional rights were violated, and (4) if sued in their individual capacities, defendants are entitled to qualified immunity. (Doc. 18.)

Plaintiff responds that he is suing defendants in both their official and individual capacities. (Doc. 27 at ¶ 27.)

## II. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir.1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d 607 *(citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

AO72A
(Rev. 8/82)

### III. Discussion

Due Process Claim

The plaintiff contends that his due process rights were violated when he was confined to administrative segregation following a 30-day term of punitive lock down which was imposed after he assaulted another inmate. Defendants respond that plaintiff was placed on administrative segregation following the lock down to maintain order at the Benton County Detention Center by separating inmates who had a history of fighting. Defendants further state that plaintiff was permitted outside of his cell one hour per day for recreation, visitation, and to attend religious services. They submit the plaintiff's Activity Report to support this claim. (Docs. 19, 20 at Ex. 2.)

Plaintiff's claim that his due process rights were violated due to his placement on administrative segregation fails because there is not a genuine issue of material fact that the defendants confined him for any reason other than for institutional security. *See Bell v. Wolfish*, 441 U.S. 520, 538-40, 546, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) (maintaining safety and internal order within institution are permissible nonpunitive objectives); *Martinez v. Turner,* 977 F.2d 421, 423 (8th Cir.1992) (pretrial detainees may not be punished, and whether particular restriction or condition accompanying pretrial detention is punishment turns on whether restriction or condition is reasonably related to legitimate governmental objective), *cert. denied,* 507 U.S. 1009, 113 S. Ct. 1658, 123 L. Ed. 2d 277 (1993). Prior to his punitive lock down, plaintiff did receive a hearing, but the defendants were not obligated to provide him with such a hearing before placing him on administrative segregation. Defendants placed plaintiff on administrative segregation for the legitimate governmental objective of maintaining order and

safety at the detention center. Thus, plaintiffs confinement to administrative segregation did not violate his due process rights, and defendants should be granted summary judgment on this claim.

First Amendment Claim

The plaintiff alleges that his First Amendment rights were violated when he was prohibited from attending group church services while on lock down status and later while on administrative segregation. The defendants state that "Inmates who are on lock down for violating Benton County Detention Center's rules and regulations are not generally permitted to attend the group religious services, however, these inmates may request a private session with a chaplain." (Doc. 20 at Ex. 1 at ¶ 13.)

"In a claim arising under the First Amendment's Free Exercise Clause, an inmate must first establish that a challenged policy restricts the inmate's free exercise of a sincerely held religious belief." *Brown-El v. Harris*, 26 F.3d 68, 69 (8th Cir. 1994). "The fact of confinement and the needs of the penal institution impose limitations on the constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125, 97 S. Ct. 2532, 2537, 53 L. Ed. 2d 629 (1977). An inmate's exercise of freedom of religion may be restricted, however, if that restriction is reasonably related to legitimate penological interests, such as security of the facility. *See Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 65 (1987). Courts have noted that issues of prison and jail management are best determined by prison officials and administrators, and court are reluctant to substitute their judgment for that of the officials and administrators. *See Iron Eyes v. Henry*, 907 F.2d 810, 812 (8th Cir. 1990).

Concerning the plaintiff's complaint that he was not permitted to attend group religious services while on lock down, or punitive segregation, this claim fails to state a violation of his constitutional rights. The defendants assert that those who are placed on lock down are not permitted to attend group religious services. These inmates have violated the rules in the Benton County Detention Center. Obviously, such a policy is in place to help maintain the order and security of the facility, especially where inmates such as the plaintiff have assaulted other inmates. Therefore, plaintiff's First Amendment rights were not violated by restricting him from attending group religious services while on lock down.

Plaintiff also appears to claim that he was not permitted to attend religious services while on administrative segregation following the lock down. Despite this claim, the defendants have presented evidence to the court that plaintiff was permitted to attend religious services on July 17, 20, 26, 28, 29, 30, August 10, 16, 20, 27, and 27, while he was being held on administrative segregation. In response to this assertion and in light of the evidence, the plaintiff only states that he was not notified of the times of these services. There is no proof offered by the plaintiff that the defendants infringed on his right to exercise his religious beliefs in any way while he was on administrative segregation.

Official Capacity and Qualified Immunity Claims

As there has been no underlying constitutional violation, the court need not address defendants' arguments that the claims are brought against them only in their official capacities, *see Doe v. Washington Co.*, 150 F.3d 920, 922 (8th Cir. 1998) (governmental entity may be held liable for unconstitutional acts of its officials or employees when those acts implement or execute unconstitutional custom or policy), or claims that defendants are entitled to qualified

AO72A
(Rev. 8/82)

immunity on any individual capacity claim, *see Hayes v. Long*, 72 F.3d 70, 73 (8th Cir. 1995) (first step in qualified immunity analysis is whether there is a violation of constitutional right).

### IV. Conclusion

Therefore, I recommend that defendants' motion for summary judgment (Doc. 18) be granted and that this case be dismissed with prejudice.

**The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 3rd day of February 2006.

                                            **/s/ Beverly Stites Jones**
                                        _____
                                        HON. BEVERLY STITES JONES
                                        UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)